IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

KIMBERLY NELSON,

    Plaintiff

v.                                         NO:

                                              Jury Demanded

SWBC MORTGAGE CORPORATION,

    Defendant.

## COMPLAINT

**COMES NOW the Plaintiff, KIMBERLY NELSON**. She shows:

1. This matter concerns a retaliatory discharge under Tennessee state common and statutory law, brought in this United States District Court pursuant to diversity of citizenship jurisdiction.

### I. THE PARTIES
**A. THE PLAINTIFF**

2. Plaintiff, KIMBERLY NELSON, currently resides in Nashville, Tennessee and is a citizen of the United States.

**B. THE DEFENDANT**

3. Defendant, SWBC Mortgage Corporation, is a foreign corporation

1

(Texas), who employed Plaintiff within the Middle District of Tennessee.

4.  The Defendant is bound by the Tennessee common law of retaliatory discharge and the statutory law under the Tennessee Public Protection Act (TPPA). Tenn. Code Ann. § 50-1-304.

## II. JURISDICTION AND VENUE

5.  This Court has jurisdiction pursuant to diversity of citizenship, as this case involves "citizens" of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1).

6.  Venue is proper in the Middle District of Tennessee under 28 U.S.C. §1391(b)-(c). Defendant conducts business within the Court's jurisdictional limits, and the claims at issue arose within the Court's jurisdictional limits.

## III. FACTS

7.  Beginning in February of 2012, Defendant employed Plaintiff in its mortgage services business as an "In House Loan Officer."

8.  In March of 2012, Plaintiff reported "illegal activities" to Defendant's corporate human resources department.

9.  First, Plaintiff reported that her direct report, Danny Esquibel, made false or deceptive representations in procuring her employment. Esquibel made Plaintiff wait until her first day of work, February 13, 2012, to actually produce the writing. The writing, sent by human resources, contained a

2

completely different compensation system than the one agreed to between Plaintiff and Esquibel. Even then, Esquibel made further deceptive representations, instructing Plaintiff to strike through the commission structure in the written agreement submitted by human resources. Thus, Plaintiff complained about "illegal activity" of the deceptive representations, or false pretenses, to induce Plaintiff's employment. Tenn. Code Ann. §50-1-102 (a)(1).[1]

10. Second, Plaintiff complained that a non-employee, <u>without a license</u>, was taking loan applications and securing confidential information for the purpose of securing mortgages. This person had come to Plaintiff, explained he was not employed (but was awaiting an employment promise from Esquibel), but that he was expecting remuneration from providing the loans. Thus, Plaintiff was complaining about "illegal activity" under both federal and state statutes— under Public Law 110-289, Title V—S.A.F.E. (SECURE AND FAIR ENFORCEMENT FOR MORTGAGE LICENSING ACT OF 2008),

---

[1] **False or deceptive representations in procuring employees**. (a) (1) It is unlawful for any person to induce, influence, persuade or engage workers to change from one place to another in this state, or to bring workers of any class or calling into this state to work in any type of labor in this state through or by means of false or deceptive representations, false advertising or false pretenses, concerning the kind and character of the work to be done, or the amount and character of compensation to be paid for the work, or the sanitary or other conditions of the employment, or as to the existence or nonexistence of a strike or other trouble pending between employer and employees, at the time of or prior to the engagement.

Tenn. Code Ann. § 50-1-102.

3

Case 3:12-cv-00303   Document 1   Filed 03/26/12   Page 3 of 6 PageID #: 3

individuals who receive compensation or gain for taking residential mortgage loan applications must be licensed or registered as a Mortgage Loan Originator. These licensing requirements include, *inter alia,* background checks, national mortgage test, 20 hours of pre-licensure courses which include federal law and regulations and ethics, and continuing annual education. Similarly, Tennessee requires licensure of persons who act as mortgage loan originators pursuant to Tenn. Code Ann. §45-13-301, *et. seq.*

11. When Plaintiff complained to Mr. Esquibel about the practice, Mr. Esquibel instructed Plaintiff to put his wife's name down as the loan officer to cover the true facts.

12. The shady handling of her own employment, combined with the practices of the unlicensed loan officer, made Plaintiff extremely nervous and uncomfortable.

13. Defendant's corporate human resources department promised Plaintiff that it would investigate the complaints of illegal activity.

14. However, the following week, Defendant's corporate human resources department advised Plaintiff that "Mr. Esquibel denies all wrongdoing" and that the unlicensed person was actually just a middle-man who took the application from another loan officer, not Mr. Esquibel's wife, and brought it to Plaintiff for no remuneration.

15. Plaintiff challenged that such a story was non-sensical. If it were a loan officer other than Mr. Esquibel's wife, why would this person's name not be listed? And what was the purpose of a middle-man? And why did this conflict with the information given to Plaintiff directly by the unlicensed person? And why would the unlicensed person be worried about not having obtained his license?

16. Hearing Plaintiff's refusal to remain silent about the illegal activities, Defendant's human resources officer advised Plaintiff that "some more investigation may be necessary" but that Mr. Esquibel had instructed that Plaintiff's employment be terminated for "poor performance." Thus, the termination occurred practically immediately following Plaintiff's report of illegal activities. And, prior to the report, Plaintiff had not been warned of anything unsatisfactory about her employment.

17. Plaintiff has suffered lost wages and benefits. She has suffered the indignity of a termination upon her record. She has suffered worry, anxiety and humiliation from the termination. She seeks such actual and compensatory damages, along with punitive damages to deter such wrongdoing in the future. Under the TPPA, she also seeks her attorneys fees.

## IV. LEGAL CAUSES OF ACTION

18. Based on the foregoing, Plaintiff brings suit against Defendant for:

5

A. Violation of the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304;

B. Tennessee common law retaliation.

19. Plaintiff demands a jury.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF requests Defendant Answer this Complaint, that Plaintiff be Awarded all compensatory damages available, any other equitable relief, wage and benefit losses, punitive damages, her attorneys fees, costs, prejudgment interest and post-judgment interest, and any further relief at either law or equity to which she may be entitled.

Respectfully submitted,

**GILBERT RUSSELL McWHERTER PLC**

/s Justin S. Gilbert
Justin S. Gilbert (TN Bar No. 017079)
Jonathan L. Bobbitt (TN Bar No. 023515)
Jessica F. Salonus (TN Bar No. 28158)
101 North Highland
Jackson, TN 38301
Telephone: 731-664-1340
Facsimile: 731-664-1540
jgilbert@gilbertfirm.com
mrussell@gilbertfirm.com
jbobbitt@gilbertfirm.com